**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| RAMONA TWO SHIELDS, et al. | |
| Plaintiffs, | No. 11-531L |
| v. | Hon. Lawrence J. Block |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

**UNITED STATES' OPPOSITION TO [3] MOTION FOR CLASS CERTIFICATION**

IGNACIA S. MORENO
Assistant Attorney General

STEPHEN R. TERRELL
Trial Attorney
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, DC  20044-0663
Tel:    (202) 616-9663
Fax:    (202) 305-0506
Stephen.Terrell@usdoj.gov

Attorney for the United States

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    RELEVANT BACKGROUND ............................................................................. 2

III.   ARGUMENT ....................................................................................................... 9

   A.  Standard of Review for a Motion for Class Certification ................................. 10

   B.  Plaintiffs Have Failed to Show Commonality. ................................................. 11

   C.  Plaintiffs' Claims Are Not Typical of the Putative Class. ................................ 13

   D.  The United States Did Not Act on Grounds Generally Applicable to the Class. .............. 16

   E.  A Class Action Is Not Superior to Other Available Methods for Adjudicating the
       Controversy. .................................................................................................... 17

IV.    CONCLUSION .................................................................................................. 18

# TABLE OF AUTHORITIES
## Cases

Abel v. United States, 18 Cl. Ct. 477 (1989) ................................................................. 13

Abrams v. United States, 57 Fed. Cl. 439 (2003) ........................................................ 13

Barnes v. United States, 68 Fed. Cl. 492 (2005) ........................................................ 10

Berkley v. United States, 45 Fed. Cl. 224 (1999) ........................................................ 18

Buchan v. United States, 27 Fed.Cl. 222 (1992) ........................................................ 17

Filosa v. United States, 70 Fed. Cl. 609 (2006) ........................................................ 11

Gen. Tel. Co. of the Southwest v. Falon, 457 U.S. 147 (1982) ................................... 13

Geneva Rock Products, Inc. v. United States ___ Fed. Cl. ___, 2011 WL 4099150 (2011) ........ 17

Haggart v. United States, 89 Fed. Cl. 523 (2009) ........................................................ 11

In re Anthracite Coal Antitrust Litigation, 78 F.R.D. 709 (M. D. Pa. 1978) ............... 18

In re Schering Plough Corp. ERISA Litig., 589 F.3d 585 (3rd Cir. 2009) ............. 15, 16

Quinault Allottee Ass'n v. United States, 453 F.2d 1272 (Ct. Cl. 1972) (en banc) ............ 10

Rasmuson v. United States, 91 Fed. Cl. 204 (2010) ................................................ 10

Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584 (7th Cir. 1993) ............ 13, 14

Spano v. The Boeing Co., 633 F.3d 574 (7th Cir. 2011) ........................................ 14, 15

United States v. Jicarilla Apache Nation, ___ U.S. ___, 131 S. Ct. 2313 (2011) ............ 3

United States v. Navajo Nation, 537 U.S. 488 (2003) ................................................ 3

Wal-Mart Stores, Inc. v. Dukes, ___ U.S. ___, 131 S. Ct. 2541 (2011) ............ 10, 11, 12, 13

## Statutes and Regulations

25 C.F.R. § 169.1 ................................................................................................. 3

25 C.F.R. § 211.24 ............................................................................................. 5

25 C.F.R. § 211.27 ............................................................................................. 5

25 C.F.R. § 211.28 .................................................................................................. 5

25 C.F.R. § 211.51 .................................................................................................. 5

25 C.F.R. § 212.20 ............................................................................................ 3, 4, 14

25 C.F. R. § 212.21 ................................................................................................. 2

25 C.F.R. § 212.24 .................................................................................................. 5

25 C.F.R. § 212.28 .................................................................................................. 5

25 C.F.R. § 212.4 .................................................................................................... 3

25 C.F.R. § 212.40 .................................................................................................. 3

25 C.F.R. § 212.41 .................................................................................................. 5

25 C.F.R. § 212.48 .................................................................................................. 3

25 C.F.R. § 212.49 .................................................................................................. 3

25 C.F.R. § 212.51 .................................................................................................. 5

25 C.F.R. § 212.6 .................................................................................................... 3

25 U.S.C. § 396 ................................................................................................... 2, 5

25 U.S.C. § 403 ...................................................................................................... 3

Pub. L. No. 102-408 ............................................................................................... 4

RCFC 23 ......................................................................................................... passim

RCFC 40.2 ............................................................................................................ 17

RCFC 42 ............................................................................................................... 17

## I.      INTRODUCTION

The United States opposes Plaintiffs' motion to certify this case as a class action (Docket

No. 3), and supporting memorandum (Docket No. 4), because Plaintiffs' claims are not typical of

the claims of other putative class members, common issues of law and fact do not predominate

amongst putative class members, this case does not involve government action generally

applicable to the whole putative class, and an opt-in class is not a superior means to address the

alleged claims of the putative class.[1/]  Plaintiffs, individual Indian allottees with interests in land

on the Fort Berthold Indian Reservation, allege that the United States breached one or more

fiduciary trust obligations owed to them by approving oil and gas leases that they entered into

with third-parties.  See generally, Complaint  ("Compl.") (Docket No. 1), ¶¶ 37-52, 59.

Plaintiffs seek to represent a class of all individual Indian allottees with interests in land on the

Fort Berthold Indian Reservation whose leases were ultimately assigned to Williams Companies

based upon an undefined, and unspecified, "uniform review policy."  See Docket No. 4 at 7.  The

putative class members have agreed to different oil and gas leases, on different allotments, over

the course of a four-year period.  The evidence shows that Plaintiffs' claims (if any) are not

typical of the putative class and are not common to the putative class because the leasing process

at issue is governed by statute and regulations that result in individualized issuance and review of

oil and gas leases on allotted Indian land.  As such, generally applicable government action or

inaction is not at issue in this case.  Furthermore, Plaintiffs, and most of the putative class, have

asserted their claims in Cobell, et al. v. Salazar, et al., D.D.C. No. 96-cv-1285 (now pending

before the United States Court of Appeals for the District of Columbia), and, if the settlement in

---

[1/]      On October 20, 2011, the United States moved to dismiss Plaintiffs' complaint for lack of
subject-matter jurisdiction.  Docket No. 7.  As of the date of submission of this opposition, the
United States' motion remains pending and is still being briefed.  Should the Court grant the
United States' motion, it is without jurisdiction to certify a class and Plaintiffs' instant motion
will be moot.

that case is affirmed on appeal and becomes final, Plaintiffs' claims will be settled, released, and extinguished; differentiating Plaintiffs from putative class members that may have opted-out of Cobell.  Thus, class certification is improper under rule 23 of the Rules of the United States Court of Federal Claims ("RCFC").  Additionally, Plaintiffs' motion and Plaintiffs' complaint fail to show that class certification is superior to individualized claims.

## II.   RELEVANT BACKGROUND

Plaintiffs claim they are owners of restricted trust-status Indian land.  Compl., ¶¶ 2-3. Plaintiffs allege that the United States, through the Department of the Interior's Bureau of Indian Affairs ("BIA"), "has the express fiduciary obligation under federal law to approve or disapprove the lease terms between a lessee oil and gas company and the lessor/allottee by applying a uniform 'best interest' standard for individual Indian mineral owners of trust lands. . . ."  Compl., ¶ 10(c).  Plaintiffs claim that BIA approved allegedly "below market" leases on allotted Indian lands, including their trust land.  Compl., ¶ 12, 37.  Plaintiffs appear to claim that the United States failed to obtain both reasonable bonus payments and to maximize royalty rates.  Compl., ¶¶ 54-55.  Plaintiffs claim that the United States owes them fiduciary obligations "set forth in specific statutes and regulations as well as in federal common law."  Compl., ¶ 36.  Plaintiffs claim that the United States breached those duties by the aforementioned conduct as well as approving assignments of mineral leases on allotted Indian lands, including their trust land. Compl., ¶ 13.

Oil and gas leasing on allotted Indian land is governed by statute and regulation.  The Secretary of the Interior's role in Indian leasing is largely supervisory and the parties to Indian leases are the Indians and the third-party lessee.[2/]  25 U.S.C. § 396 allows an Indian allottee to

---

[2/]     The exception to this general rule, not applicable here, is when the Indian is a minor or incompetent.  See 25 C.F.R. § 212.21.

lease his or her mineral interests, subject to the rules and regulations enacted by the Secretary of the Interior.  The mineral leasing statute is concurrent with the general Indian leasing statute, which provides that "[a]ny Indian allotment held under a trust patent may be leased <u>by the</u> <u>allottee</u>. . . . subject to and in conformity with such rules and regulations as the Secretary of the Interior may prescribe. . . ."  25 U.S.C. § 403 (emphasis added).

Oil and gas leasing on allotted Indian land implicates several Bureaus within the Department of the Interior.  BIA is responsible for leasing and surface permitting.  <u>See</u>, <u>e.g.</u>, 25 C.F.R. § 212.20; 25 C.F.R. §§ 169.1, <u>et</u> <u>seq.</u>  The Bureau of Land Management ("BLM") is responsible for approving applications for permits to drill ("APDs").  <u>See</u> 25 C.F.R. §§ 212.4, 212.49.  Once wells are drilled and oil and gas are produced in paying quantities, the Office of Natural Resource Revenue ("ONRR") is responsible for royalty collection and enforcement.  <u>See</u> 25 C.F.R. §§ 212.6, 212.40.[3/]  Reclamation and remediation efforts during and upon conclusion of the oil and gas operation are overseen by BIA and BLM.  <u>See</u> 25 C.F.R. § 212.48.  The actions of each Bureau are proscribed by regulations.   In turn, the extent of the United States' fiduciary obligations owed to Plaintiffs, and enforceable in this Court by an award of money damages, are only those defined by a "substantive source of law" that must be a "statutory or regulatory prescription," not arising merely out of a "general trust relationship."  <u>United States v. Navajo</u> <u>Nation</u>, 537 U.S. 488, 506 (2003) ("<u>Navajo I</u>").  "The Government assumes Indian trust responsibilities only to the extent it expressly accepts those responsibilities by statute."  <u>United</u> <u>States v. Jicarilla Apache Nation</u>, ___ U.S. ___, 131 S. Ct. 2313, 2325 (2011).

The applicable regulations permit Indian allottees to lease mineral interest by competitive bid or by private negotiation.  25 C.F.R. § 212.20(b).  For private negotiation, a mineral lease

---

[3/]      ONRR is a successor bureau to the Minerals Management Service ("MMS").

may be approved by the Secretary if "one or more of the Indian mineral owners of a tract sought for lease requests the Secretary to negotiate for a lease on their behalf without advertising."  Id. If the Secretary determines that an allottee's request for private negotiation is unreasonable, or if there is no request for private negotiation, the mineral lease is advertised and sealed bids are received.  Id.  Upon receipt of the bids, the Secretary may accept the bid of the qualified bidder offering the highest bonus payment, reject any or all bids, re-advertise the tract for sale, or (with consent of the allottees) lease the parcel through a private negotiation.  Id.  No lease becomes final until approved by the allottee.  Id., subd. (c).

Congress has passed a special leasing statute governing mineral leasing of allotted land on the Fort Berthold Indian Reservation.  Pub. L. No. 102-408, 112 Stat. 620.  That statute provides, inter alia, that the Secretary of the Interior may issue a mineral lease on allotted land on the Fort Berthold Indian Reservation if

> the owners of a majority of the undivided interest in the Indian land that is the subject to the mineral lease or agreements. . . . consent to the lease or agreement. . . .

Id.  Additionally, Congress has permitted the Secretary of the Interior to issue mineral leases on allotted Indian land on the Fort Berthold Indian Reservation without "sale through a public auction of advertised lease."  Id. , 112 Stat. 621.  Thus, for allotted land on the Fort Berthold Indian Reservation, Congress encouraged leasing through private negotiation and permitted mineral leasing so long as the majority of allottees to each parcel approved the lease.

The bid process guarantees the allottee the highest bonus payment that the market is willing to bear for the tract of land at issue at the time of the lease, or the option to accept less than the highest bid through private negotiation.  Lease terms other than bonus payments are set by regulation and by BIA.  Rent must be a minimum of $2 per acre per year.  25 C.F.R. §

212.41(a).  Royalties must be a minimum of 16 2/3 percent, "unless a lower royalty rate is agreed to by the Indian mineral owner and is found to be in the best interest of the Indian mineral owner."  Id, subd. (b).  By statute and regulation, the initial term of the lease is not to exceed ten years.  25 U.S.C. § 396; 25 C.F. R. §§ 211.27 and 212.27.  If the lease produces oil or gas in paying quantities, the term of the lease is extended "as long thereafter as the minerals specified in the lease are produced in paying quantities."  25 C.F.R. §§ 211.27 and 212.27.  Other lease terms are also specified by regulation.  See, e.g., 25 C.F.R. §§ 211.24 and 212.24 (bond requirements); 211.28 and 212.28 (unitization and communitization agreements and well spacing); 211.51 and 212.51 (surrender).

The final lease, containing all terms of the lease, is executed by the allotee and the lessee. See, e.g., Lease 7420A48981 at 4; Hunt Decl., Ex. B.  The Secretary of the Interior's designee then approves or disapproves the lease.  Id.

Between January 1, 2006, and November 1, 2010,—the class period—2,138 oil and gas leases were issued for allotted Indian land on the Fort Berthold Indian Reservation.  Hunt Decl., ¶ 7.  Of those 2,138 leases, 289 fall within plaintiffs' class definition.  Id.  Those 289 leases involve 1,971 Indian owners.  Id., ¶ 2.  Those 289 leases were the result of advertised leases and private negotiations.  Id., ¶ 11.  Each lease addresses a different tract of land on the Fort Berthold Indian Reservation.  Id., ¶ 12.  Bonus payments for the 289 leases ranged from $76.25 per acre to $1,050 per acre.  Id., ¶ 13.

A portion of the Fort Berthold Indian Reservation is underlain by the Bakken Shale oil formation.  See Compl., ¶ 8.  The quality and quantity of oil in that formation varies based upon certain geophysical factors.  Hunt Decl., ¶¶ 15-16. Petroleum engineers for industry and for the Department of the Interior have determined that oil quantity and quality are superior to the west

of the Bakken thermal maturity line.  Id., ¶ 16; see also id., Ex. A.  Based upon geotechnical information, it is anticipated that different locations within the Bakken formation will be more productive than other locations.  Id., ¶ 16.  13 of the 289 leases at issue lie east of the Bakken thermal maturity line.  Id.

Plaintiff Ramona Two Shields has interest in allotments 651A and M868A on the Fort Berthold Indian Reservation.  Compl., ¶ 2.  Plaintiff Mary Louise Defender Wilson has an interest in allotment M868A on the Fort Berthold Indian Reservation.  Id., ¶ 3.  Allotment 651A is a 320 acre tract of land located in the interior of the Fort Berthold Indian Reservation, within Dunn County, North Dakota, with an undivided surface and mineral estate.  Hunt Decl., ¶ 19 and Ex. A.  There are nine Indian allottees who have an interest in allotment 651A.  Id., ¶ 20.  Allotment M868A is a 314.180 acre parcel of mineral interests only located towards the western edge of the Fort Berthold Indian Reservation, within McKenzie County, North Dakota.  Id., ¶ 21 and Ex. A.  There are 205 Indian allottees who have an interest in allotment M868A.  Id., ¶ 21.

Tract 651A was advertized for oil and gas mining lease.  Id., ¶ 22.  Sealed bids were received, and ZENERGY Properties 6 Ft. Berthold Allottee, LLC, was identified as the high bidder with a bonus payment of $451.48 per acre.  Id.  On November 20, 2007, a standardized oil and gas mining lease for allotted Indian lands was entered into between ZENERGY and allottees with an interest in tract 651A.  Lease 7420A48981; Id., Ex. B.  On November 20, 2007, Plaintiff Two Shields executed an Acceptance of Lessor to be Attached to Oil and Gas Mining Lease ("Acceptance of Lessor").  Id.  In that Acceptance of Lessor, Plaintiff Two Shields was informed of the bonus amount ($451.48 per acre), the royalty (18%), and the rent ($2.50 per acre).  On December 19, 2007, the Acting Superintendent of the Fort Berthold BIA Agency approved Lease 7420A48981.  Id.  Pursuant to Department of the Interior regulations, Lease 7420A48981 was

subsequently assigned to Dakota-3 E&P Company, LLC, on March 23, 2009, and to Williams in

2010.  Id., ¶ 24.  Lease 7420A48981 has produced oil in paying quantities.  Id., ¶ 25.  The bonus

payment for Lease 7420A48981 was received by BIA and distributed to Plaintiff Two Shields

and the other allottees with an interest in allotment 651A.  Id., ¶ 26.  Rent has been timely paid

by the lessee and distributed to Plaintiff Two Shields and the other allottees with an interest in

allotment 651A.  Id., ¶ 27.

      Tract M868A was advertized for oil and gas mining lease.  Id., ¶ 28.  Sealed bids were

received, and ZENERGY Properties 6 Ft. Berthold Allottee, LLC, was identified as the high

bidder with a bonus payment of $400.00 per acre.  Id.  On February 12, 2008, a standardized oil

and gas mining lease for allotted Indian lands was entered into between ZENERGY and allottees

with an interest in tract M868A.  Lease 7420A49251; Id., Ex. C.  On January 11, 2008, Plaintiff

Two Shields executed an Acceptance of Lessor for this lease.  Id.  In that Acceptance of Lessor,

Plaintiff Two Shields was informed of the bonus amount ($400.00 per acre), the royalty (18%),

and the rent ($2.50 per acre).  On February 24, 2008, the Area Director of the BIA Great Plains

Region approved Lease 7420A49251.  Id.  Pursuant to Department of the Interior regulations,

Lease 7420A49251 was subsequently assigned to Dakota-3 E&P Company, LLC, on March 23,

2009, and to Williams in 2010.  Id., ¶ 30.  To date, Lease 7420A49251 has not generated oil or

gas in paying quantities.  Id., ¶ 31.  The bonus payment for Lease 7420A49251 was received by

BIA and distributed to Plaintiffs Two Shields and Defender Wilson and the other allottees with

an interest in allotment M868A.  Id., ¶ 32.  Rent has been timely paid by the lessee and

distributed to Plaintiffs Two Shields and Defender Wilson and the other allottees with an interest

in allotment M868A.  Id.

      As of the date of this opposition, 120 Indian allottee oil and gas leases within the class

definition on the Fort Berthold Indian Reservation have produced oil or gas in paying quantities. Id., ¶ 33.  For those leases that result in oil or gas production in paying quantities, those lease terms will be extended as long thereafter as oil or gas is produced in paying quantities, and royalties will be paid based upon the produced oil or gas.  Id.  For those leases that do not result in production of oil or gas in paying quantities during the term of the lease, those leases will expire and the allottees will have the option to issue new leases (by competitive bid or private negotiation) that may result in new bonus payments.  Id., ¶ 34.

Plaintiffs Two Shields and Defender Wilson are members of the "Trust Administration Class" in the Cobell litigation.  Plaintiffs allege they own interests in allotments 651A and 868A on the Fort Berthold Indian Reservation.  Compl., ¶¶ 2-3.  Plaintiff Two Shields had an interest in restricted trust land in 2007 (among other times).  Compl., ¶ 64(a).  Plaintiff Defender Wilson had an interest in restricted trust land in 2008 (among other times).  Compl., ¶ 64(b).  The "Trust Administration Class" consists, in pertinent part, of individual Indians who had an IIM account at any time after approximately 1985 or, as of September 30, 2009, had a recorded or other demonstrable beneficial ownership interest in land held in trust or restricted status.    Cobell Docket No. 3670.

Plaintiffs did not opt-out of the Trust Administration Class.  See, Cobell, Docket No. 3850, Exhibits A and B.  1,824 individuals timely requested exclusion from the Trust Administration Class.  Id., ¶ 7.  As members of the Trust Administration Class, Plaintiffs are entitled to a $500 "baseline" payment plus a prorated amount of the remaining available settlement funds as determined by the claims administrator.  Cobell Settlement Agreement, Terms of Agreement, ¶ (E)(4)(b); Cobell Docket No. 3660-2.  Under the settlement agreement, participating Plaintiffs also have an opportunity to request reconsideration of their settlement

award and appeal their initial award to the claims administrator.  Id., ¶ (E)(4)(e)(5).

On July 27, 2011, the District Court entered its order granting final approval to the settlement.  Cobell, Docket No. 3850.  Therein, the District Court ordered that

> [t]he Settlement Agreement and this Order and Judgment are binding on all members of the Trust Administration Class who are not identified among the excluded class members in Exhibits A or B hereto.  Such members of the Trust Administration Class and their heirs, administrators, successors or assigns shall be deemed to have released, waived and forever discharged the Resasees [including the United States] as set forth in Section I of the Settlement Agreement (except for those provisions in Section I relating solely to the Historical Accounting Class) and to have agreed to the stated balances in their IIM Accounts as provided for in Paragraph 1.8 of the Settlement Agreement.

Id., ¶ 10.  Those released claims include "any and all claims and/or causes of action that were, or should have been, asserted in the Amended Complaint when it was filed, on behalf of the Trust Administration Class, by reason of, or with respect to, or in connection with, or which arise out of, matters stated in the Amended Complaint for Funds Administration Claims or Land Administration Claims that the Mismanagement Releasors, or any of them, have against the Releasees, or any of them."  Settlement Agreement, Terms of Agreement, ¶ (I)(2).

## III.   ARGUMENT

Plaintiffs' motion for class certification should be denied because Plaintiffs fail to meet their burden of satisfying each of the requirements for class certification as set forth in RCFC 23.  Plaintiffs' reliance on unsupported assertions of counsel and allegations in their complaint does not withstand the "rigorous analysis" required by RCFC 23.  Plaintiffs fail to show that common issues of law and fact predominate amongst putative class members or that the putative class members' potential claims are the result of generally applicable government action or inaction.  Plaintiffs fail to establish that their claims are typical of the claims of the putative class.  Plaintiffs fail to explain how participation in the Cobell class action settlement does not differentiate them from putative class members that timely opted-out of the Cobell Trust

Administration Class.  Finally, Plaintiffs have not shown that class certification is a superior method of resolving this suit.

### A.       Standard of Review for a Motion for Class Certification

To certify a class action asserting claims against United States: (1) plaintiffs must constitute a large, but manageable class; (2) there must be a question of law common to the whole class; (3) this common legal issue must predominate over any separate factual issues affecting the individual members; (4) the claims of the named plaintiffs must be typical of the claims of the class; (5) the government must have acted on grounds generally applicable to the whole class; (6) the claims of many putative class members must be so small that it is doubtful that they would otherwise be pursued; and (7) the current plaintiffs must fairly and adequately protect the interests of the class, without conflict of interest.  Rasmuson v. United States, 91 Fed. Cl. 204, 210 (2010).  These elements, as established by Quinault Allottee Ass'n v. United States, 453 F.2d 1272 (Ct. Cl. 1972) (en banc), and embodied in RCFC 23, "can be grouped into five categories: (i) numerosity—a class so large that joinder is impracticable; (ii) commonality—in terms of the presence of common questions of law or fact, the predominance of those questions, and the treatment received by the class members at the hands of the United States; (iii) typicality—that the named parties' claims are typic[al] of the class; (iv) adequacy—relating to fair representation; and (v) superiority—that a class action is the fairest and most efficient way to resolve a given set of controversies."  Barnes v. United States, 68 Fed. Cl. 492, 494 (2005) (emphasis omitted).  Failure to satisfy any one of the elements of RCFC 23 is fatal to a motion for class certification.  Rasmunson, 91 Fed. Cl. at 210.

RCFC 23 is more than a mere pleading standard, it requires the proponent of the class action to set forth evidence establishing the elements of the rule.  "Rule 23 does not set forth a mere pleading standard."  Wal-Mart Stores, Inc. v. Dukes, ___ U.S. ___, 131 S. Ct. 2541, 2551

(2011).[4/]  Instead, a "party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Id. (emphasis omitted); see also Filosa v. United States, 70 Fed. Cl. 609, 615 (2006) ("The party moving for class certification bears the burden of satisfying the requirements set forth in RCFC 23 by a preponderance of the evidence.").  The Supreme Court has held that "it may be necessary for the court to probe behind the pleadings" and that "certification is proper only if 'the trial court is satisfied after rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." Wal-Mart, 131 S. Ct. at 2551. "Frequently, that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim" because "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising plaintiff's cause of action." Id.  Thus, "to certify a class, plaintiffs must establish, by a preponderance of the evidence, that the proposed action satisfies each of the five elements" of RCFC 23.  Haggart v. United States, 89 Fed. Cl. 523, 530 (2009).

    **B.    Plaintiffs Have Failed to Show Commonality.**

    Plaintiffs' claims with respect to the oil and gas leases for their allotments do not share common questions of law or fact with other putative class-members' claims as to different leases for different allotments.  The Supreme Court has explained that "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" Wal-Mart, 131 S. Ct. at 2551.  The Supreme Court, however, cautioned that commonality "does not mean merely that they have all suffered a violation of the same provision of law." Id.  In Wal-Mart, the Supreme Court recognized that the law at issue, Title VII, could be violated in many ways,

---

[4/]    RCFC 23 is substantially similar to Fed. R. Civ. P. 23, at issue in Wal-Mart.  Precedent under the Federal Rules of Civil Procedure is persuasive in this court.  Anderson Columbia Envt'l, Inc. v. United States, 42 Fed. Cl. 880, 881 (1999).

such as intentional discrimination, hiring and promotion practices that have disparate impact, and the use of these practices by different managers in the same company.  <u>Id.</u>  Despite the foregoing, the Supreme Court rejected the idea that "the mere claim by employees of the same company that have suffered a Title VII injury, or even a disparate-impact injury" could satisfy rule 23's commonality prong.  <u>Id.</u>  Instead, the Supreme Court held that plaintiffs' "claims must depend on a common contention. . . ."  <u>Id.</u>  The Supreme Court went on to explain that the common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  <u>Id.</u>  Conversely, "[d]issimilarities within the proposed class are what have the potential to impede the generation of common answers."  <u>Id.</u>

In this case, individual fact issues predominate over common fact issues.  Each tract of allotted land that was leased during the class period resulted in a separate and distinct lease. There are 289 such leases, and they cover different geographical portions of the Fort Berthold Indian Reservation.  Hunt Decl., Ex. A.  Some of those leases were issued after competitive bid. Other leases were issued by private negotiation at the request of the Indian owners.  <u>Id.</u>, ¶ 11. The leases were issued over a span of four years.  The competitively bid leases reflect the bonus that the market would bear for the specific tract of land at issue at the time of the bid.  Different Indian allottees may have different reasons to lease their mineral interests by private negotiation.

Because Plaintiffs claim that they did not receive the fair market bonus rate on their oil and gas leases, to resolve those claims the Court will have to review the specific quality and quantity of oil and gas on each parcel based upon its location and geophysical properties, the Court will have to review whether the lease was competitively bid and the reasons why certain allotees chose to lease their property by private negotiation, and the Court will have to consider

market factors for each specific tract of land at the time that it was put up for lease.  Even if there

are some questions of law and fact common to the entire class, specific and individual factors

such as the foregoing preclude class certification.  Abel v. United States, 18 Cl. Ct. 477, 478

(1989).  Even where legal issues are common, and even in situations where the United States has

admitted liability, individualized factual issues "crucial to determining damages" can defeat class

certification.  Abrams v. United States, 57 Fed. Cl. 439, 440-41 (2003).  Because of

individualized circumstances surrounding issuance of the leases at issue here, the putative class

members may not have suffered the "same injury" as Plaintiffs.  Wal-Mart, 131 S. Ct. at 2551.

The Court's resolution of liability on one, or two, leases will not then "resolve an issue that is

central to the validity of each one of the claims in one stroke."  Id.   Thus, Plaintiffs have failed

to prove that the purported class meets the commonality requirements set forth in RCFC 23.

> **C.    Plaintiffs' Claims Are Not Typical of the Putative Class.**

Plaintiffs have failed to show that their claims or the defenses to their claims are typical

of the claims and defenses of the putative class because unique factors will inform whether the

United States breached any trust obligations for each allottee and several unique defenses apply

to Plaintiffs' claims.  Thus, Plaintiffs do not satisfy RCFC 23(a)(3).

Although typicality and commonality may "tend to merge," Gen. Tel. Co. of the

Southwest v. Falon, 457 U.S. 147, 157 n. 13 (1982), typicality focuses on whether the named

representatives' claims "have the same essential characteristics of the class at large."  Retired

Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 597 (7th Cir. 1993).  Here, Plaintiffs claim

that the bonus payments for their allotted oil and gas leases are too low and that certain other

lease terms are unfavorable to their interests.  Compl., ¶¶ 54-55.  Plaintiffs' claims of an

inadequate bonus are different than other putative class members' claims as to bonus payments.

No specific statute, law, or regulation, requires a minimum (or maximum) bonus payment for

Indian allotted land oil and gas leasing.  The location of the tract of land at issue will likely influence the bonus payment, based upon the quality and quantity of oil and other geotechnical factors.  Hunt Decl., ¶¶ 15-16.  Whether a plaintiff knowingly agreed to and consented to their specific bonus payment may depend on the specific lease and associated documents.  Here, plaintiff Two Shields signed Acceptance of Lessor agreements for both of her leases at issues.  Hunt Decl., Exs. B and C.  In contrast, plaintiff Defender Wilson did not sign Acceptance of Lessor statements.  Id.  Some leases were issued by competitive bid, including those of the named Plaintiffs.  Id., ¶¶ 11, 22, 28.  Other leases were issued by private negotiation.  Id., ¶ 11.  The regulations governing the issuance of a lease by competitive bid and those by private sale differ.  25 C.F.R. § 212.20.  Thus, Plaintiffs' claims for an allegedly inadequate bonus payment on a competitively bid lease varies substantively from a putative class members' claim for an allegedly inadequate bonus on a private negotiation lease.

In Spano v. The Boeing Co., 633 F.3d 574 (7th Cir. 2011), the United States Court of Appeals for the Seventh Circuit reversed and remanded the district court's certification of a class of retirement plan beneficiaries because it was possible that some plan beneficiaries held the challenged investments, while other plan beneficiaries may have never invested in the challenged investment options.  633 F.3d at 586.  The same disparity of claims among putative class members exists here.  For example, the allegedly below-marked bonus payment claims of competitive bid lessors are materially different than the claims of private negotiation lessors, and still more different than those claims of lessors whose tracts were competitively bid but then let by private negotiation with the consent of the Indian mineral owners.  The geophysical difference in the quality and quantity of oil on the Three Affiliated Tribes Reservation also differentiates amongst class members.  If Plaintiffs' tracts are of relatively low quality oil, they

may be willing to accept a lesser bonus payment than other allottees, and vice versa. Because each tract is individually let, there is no congruence between the Plaintiffs' leases (and the claims associated with those leases) and those held by members of the putative class they wish to represent. Id.

In Retired Chicago Police Ass'n, the Seventh Circuit affirmed the district court's denial of class certification where the associational plaintiff's members did not include individuals from all of the challenged fund's groups and failed to present evidence that the various fund groups were treated differently by the administrator. 7 F.3d at 597. Here, as well, Plaintiffs have not shown that the issuance of their leases was typical of how all Indian allottee oil and gas leases were issued. Further, Plaintiffs do not include representatives from groups of allottees that obtained leases through private negotiation. Thus, Plaintiffs' claims are not typical of the claims of the class.

Unique defenses also apply to Plaintiffs' claims that may not apply to other putative class members' claims. A proposed class representative does not meet the typicality requirements if "the representative is subject to a unique defense that is likely to become a major focus of the litigation." In re Schering Plough Corp. ERISA Litig., 589 F.3d 585, 598 (3rd Cir. 2009). A class representative's vulnerability to a unique defense creates the risk that "the representative's interest might not be aligned with those of the class, and that the representative might devote time and effort to the defense at the expense of issues that are common and controlling for the class. Id. If the Cobell settlement is affirmed on appeal and becomes final, Plaintiffs will be subject to defenses based upon the doctrines of waiver and release. As discussed above, it is the United States' position that the trust asset mismanagement claims advanced in this case are encompassed by the Cobell settlement release. If the Cobell settlement is affirmed on appeal and

- 15 -

becomes final, this defense available to Plaintiffs' claims will be atypical of defenses available to claims of putative class members that timely opted-out of the Trust Administration Class.

In <u>Schering Plough</u>, the district court certified a class even though the named plaintiff had signed a waiver releasing all claims against the company.  589 F.3d at 590-91.  The United States Court of Appeals for the Third Circuit reversed, vacated the class certification, and remanded for further proceedings.  <u>Id.</u> at 605.  The Third Circuit held that the named plaintiff had not meet rule 23's typicality requirement because of the release and covenant not to sue that she signed.  <u>Id.</u> at 599-601.  Specifically, the Third Circuit noted that the named plaintiff may be subject to a unique defense because of the release and covenant not to sue and that, because of the release, the named plaintiff's interest may not be sufficiently aligned with those of the putative class.  <u>Id.</u> The Third Circuit observed that it had not found a "single case in which a class was certified where the only proposed representative signed a release and a covenant not to sue and then attempted to represent a class consisting primarily of members who had not signed releases or covenants not to sue."  <u>Id.</u>  at 601.

Here, Plaintiffs Two Shields and Defender Wilson have elected to participate in the <u>Cobell</u> Trust Administration Class.  If the <u>Cobell</u> settlement is affirmed on appeal, and becomes final, Plaintiffs will be differently situated than putative class members who opted out of the Trust Administration Class, will be subject to defenses atypical of the class as a whole, and Plaintiffs' interests may diverge from the interests of the class as a whole.  Thus, Plaintiffs have failed to meet their burden of proving the typicality requirement of RCFC 23.

> **D.** **The United States Did Not Act on Grounds Generally Applicable to the Class.**

To certify a class, Plaintiffs must show that "the United States has acted or refused to act on grounds generally applicable to the class."  RCFC 23(b)(2).  Plaintiffs have failed to make

that showing here.  The only commonality between class members is that their leases were issued

pursuant to the same set of regulations.  But, each individual lease was issued at a different time,

for a different tract of land, and in a different manner pursuant to those generally applicable

regulations.  289 leases issued pursuant to a common statutory and regulatory scheme should be

distinguished from cases involving a single Notice of Interim Trail Use that affects multiple

property owners.  Cf. Geneva Rock Products, Inc. v. United States ___ Fed. Cl. ___, 2011 WL

4099150, *11 (2011).  Unlike in cases where RCFC 23(b)(2) has been found to be satisfied, this

case does not involve a common, identical, or single action by the United States that affects

multiple class members.  Instead, the only commonality amongst class members here is

government action pursuant to a common regulatory and statutory scheme, but implemented on a

lease-by-lease basis.  A common statutory and regulatory backdrop is insufficient to meet the

requirements of RCFC 23(b)(2), thus class certification should be denied.

     **E.**     **A Class Action Is Not Superior to Other Available Methods for Adjudicating the Controversy.**

Plaintiffs have failed to demonstrate that class certification is superior to alternative

means of addressing the putative class members' claims, including individual actions that can be

coordinated (RCFC 40.2) or consolidated (RCFC 42(a)).  To certify a class the Court has to

determine "that a class action is superior to other methods for fairly and efficiently adjudicating

the controversy."  RCFC 23(b)(3).  Only opt-in classes are permitted under RCFC 23, and the

opt-in approach "resembles permissive joinder in that it requires affirmative action on the part of

every potential plaintiff" in order to join the lawsuit and "unidentified claimants are not bound"

by a ruling in the United States' favor.  Buchan v. United States, 27 Fed.Cl. 222, 223 (1992).  As

observed by Plaintiffs (Docket No 4 at 9), "[c]ertification should be granted most liberally where

the amount of the individual recovery is small in relation to the litigation costs."  Berkley v.

United States, 45 Fed. Cl. 224, 228 (1999).  Here, Plaintiffs seek $400 million in damages for a class of "in excess of one thousand persons."  Compl., ¶ 60, Prayer, ¶ g.  Applying Plaintiffs' claimed damages ($400 million) to the number of Indian lessors in the class (1,971) results in an average claim of over $200,000 per class member.  Thus, the potential claim value is large enough such that individual claimants have an incentive to bring suit and may have "interests in individually controlling the prosecution of separate actions."  RCFC 23(b)(3)(A).

Additionally relevant to the superiority inquiry is the fact that another action is pending for the same claims: the Cobell litigation.  See In re Anthracite Coal Antitrust Litigation, 78 F.R.D. 709, 720 (M. D. Pa. 1978) (considering fact that "[s]everal lawsuits have been filed against the Defendants alleging a conspiracy to control prices.").  Furthermore, 1,824 individuals timely requested exclusion from the Trust Administration Class, suggesting that at least some individual Indians want to pursue their trust mismanagement claims individually.  In light of the size of the putative class members' potential claims, the lack of typicality amongst putative class members' claims, and the lack of commonality amongst putative class members' claims, Plaintiffs have failed to show that a class action is superior to numerous alternative means to resolve the putative class' claims, including individual actions, related cases, and consolidation. Thus, class certification is not appropriate here.

## IV.    CONCLUSION

Plaintiffs have failed to establish all elements necessary for class certification under RCFC 23.  Thus, for the reasons stated herein, the United States respectfully requests that Plaintiffs' motion be denied.

Respectfully submitted, December 12, 2012,

IGNACIA S. MORENO

*s/ Stephen R. Terrell*

- 18 -

STEPHEN R. TERRELL
Trial Attorney
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, D.C.  20044-0663
Tel.:   (202) 616-9663
Fax:    (202) 305-0506
Stephen.Terrell@usdoj.gov

Attorney for the United States

OF COUNSEL:

HOLLY CLEMENT
MICHAEL BIANCO
STEPHEN SIMPSON
SHARON PUDWILL
Office of the Solicitor
United States Department of the Interior